Case 2:21-cv-00255   Document 21   Filed on 02/24/22 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
February 25, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RONALD MCGAUGHEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-CV-00255 |
| | § | |
| THE STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION TO DISMISS CASE

Plaintiff Ronald McGaughey, appearing *pro se*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. On December 21, 2021, Plaintiff paid the $402.00 filing fee. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

For purposes of screening, the undersigned recommends that: (1) **Dr. Philemon Chang** be **DISMISSED** from this action; (2) Plaintiff's claim for money damages against **Officer Benavides** in his official capacity be **DISMISSED** as barred by the Eleventh Amendment; (3) Plaintiff's claim against the **State of Texas** be **DISMISSED** as barred by the Eleventh Amendment; (4) Plaintiff's claims seeking injunctive relief be **DISMISSED with prejudice** as rendered moot; and (5) Plaintiff's claims of excessive force and deliberate indifference against Defendants be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. § 1915A(b)(1). The

undersigned respectfully recommends further that the dismissal of this case count as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

## I.   JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.   PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the Lewis Unit in Woodville, Texas. Plaintiff's allegations in this case arise in connection with his previous housing assignments at the McConnell and Garza West Units in Beeville, Texas.

In this action, Plaintiff sues the following defendants: (1) the State of Texas; (2) Officer Benavides from the Garza West Unit; and (3) Dr. Philemon Chang from the Garza West Unit.  Plaintiff generally asserts Eighth Amendment claims of excessive force and deliberate indifference to his health.  Plaintiff sues the individual defendants in their individual and official capacities.  Plaintiff seeks monetary and injunctive relief. (Doc. No. 1, p. 4.)

---

[1]   Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury.  *See* 28 U.S.C. § 1915(g).

On January 24, 2022, the undersigned conducted a *Spears*[2] hearing where Plaintiff was given an opportunity to explain his deliberate indifference claims. Plaintiff also has submitted numerous exhibits with the Court in support of his claims. (Doc. Nos. 6, 7, 8.) Summarized below is the relevant information gleaned from these exhibits, as well Plaintiff's representations made either in his original complaint (Doc. No. 1) or at the *Spears* hearing. At the time of the *Spears* hearing, Plaintiff was 62 years old. He is 5'6" tall and weighs 219 pounds.

On April 16, 2018, following his conviction in Kleberg County, Plaintiff arrived at the Garza West Unit. (Doc. No. 18, p. 5.) Plaintiff testified at the *Spears* hearing that he was confined at the Garza West Unit for "about a year," that he was transferred to the McConnell Unit sometime in 2019, that he was housed at the McConnell Unit for about nine months, that he was transferred to Nueces County on or around June 11, 2019 on a bench warrant, and that he ended up at the Lewis Unit beginning in January 2020 after temporary stays at the Garza West Intake and the Robinson Transport Unit. *Id.* at 5-7.[3]

Plaintiff testified at the *Spears* hearing that he suffers from a number of mental and physical conditions, including the following: (1) bipolar disorder, diagnosed in 2002; (2) Hepatitis C, diagnosed in 2017; (3) carpal tunnel syndrome, diagnosed in 2018; (4) paresthesia (a pins and needles sensation) in his hands; (5) airway disease, diagnosed in 2017; (6) arthritis, diagnosed in 2016; (7) cirrhosis, diagnosed in 2016; (8) schizophrenia,

---

[2]   *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[3]   As discussed below, Plaintiff's initial account of the exact time he was confined at the Garza West and McConnell Units is contradicted by his subsequent *Spears* testimony and medical evidence submitted by him.

diagnosed in 2020; and (9) nerve disease, diagnosed in 2016.  (Doc. No. 18, pp. 7-11.)  Plaintiff's medical records further reflect that he also suffers from hypertension, COPD, and GERD.  (Doc. No. 7, p. 1.)  Plaintiff's various medical conditions have adversely impacted his ability to work, write, and understand other people.  (Doc. No. 18, pp. 11-12.)

      Plaintiff suffered a lumbar spine injury to his back around 2002.  *Id.* at 13. Plaintiff's back issues have worsened over time.  *Id.*  Plaintiff's degenerative back condition impacts his ability to walk, as he sometimes falls down after sharp pains pass through his back.  *Id.* at 14.

      While Plaintiff was housed at the Garza West Unit, Dr. Chang placed several medical, housing, and work restrictions on Plaintiff.  (Doc. No. 18, pp. 14-16.)  Dr. Chang placed restrictions on Plaintiff in 2018 preventing him from climbing, lifting, and working around chemicals.  *Id.* at 15.  Plaintiff's medical records reflect that, on June 27, 2018, Dr. Chang updated Plaintiff's restrictions to include a ground floor-only housing assignment and work assignments having no exposure to extreme humidity.  (Doc. No. 7, p. 6.)  These records further indicated that Plaintiff already had in place a restriction for a lower bunk assignment, dated October 6, 2011.  (Doc. No. 6, p. 3.)

      On June 18, 2018, Plaintiff was given a medical pass which prohibited him from being around chemicals cleaning restroom floors due to having carpal tunnel in his hands.  (Doc. No. 18, p. 27.)  Officer Benavides assaulted Plaintiff on that day by roughing up Plaintiff' hands, placing handcuffs tightly on them, and threatening to slam Plaintiff onto the cement.  *Id.* at 27-28.  Plaintiff did not resist Officer Benavides or otherwise ignore

any orders from him. *Id.* at 29, 30. As a result of Officer Benavides' actions, Plaintiff suffered swollen hands and wrists. *Id.* at 30.

Sometime in 2018, Dr. Chang authorized Plaintiff to be moved into an "air conditioned area ASAP." *Id.* at 14. According to Plaintiff, he was then moved to the McConnell Unit, which was not air-conditioned. *Id.* at 15. Three weeks after Plaintiff arrived at the McConnell Unit, an unidentified medical official placed Plaintiff in a top bunk even though Plaintiff told him he was restricted to a lower bunk only. *Id.* at 17. The official told Plaintiff that the McConnell Unit did not have any lower bunks available. *Id.* Until he was moved to a top bunk, Plaintiff slept on the floor. *Id.* at 17-18. Plaintiff complained to an unidentified official about his top bunk assignment, to no avail. *Id.* at 19.

Medical records submitted by Plaintiff, dated July 21, 2018, reflect that Plaintiff complained of back problems after falling off his top bunk earlier that morning in the McConnell Unit. (Doc. No. 6, p. 1.) At the *Spears* hearing, Plaintiff responded affirmatively to the undersigned's question whether he fell from the top bunk at the McConnell Unit. (Doc. No. 18, p. 16.) Plaintiff could not recall the exact date of when he fell and referred instead to the medical records as showing the correct date. *Id.* at 19-20.

Plaintiff testified at the *Spears* hearing that his carpal tunnel syndrome had contributed to his fall because his hand gave out when he attempted to hold the bar on the top bunk. *Id.* at 20. As a result of the fall, Plaintiff suffers from intermittent pain. *Id.* at 21. Plaintiff was subsequently moved to a bottom bunk after the fall. *Id.* at 25.

Plaintiff conceded at the *Spears* hearing that Dr. Chang did not violate his constitutional rights. *Id.* at 33. Accordingly, the undersigned recommends that Plaintiff's claims against Dr. Chang be dismissed without prejudice. Plaintiff emphasized that he seeks to sue Officer Benavides for assaulting him with excessive force. The undersigned will construe Plaintiff's *Spears* testimony as indicating his intent to: (1) sue Officer Benavides in his individual and official capacities; and (2) seek injunctive and monetary relief in this case. *Id.* at 35-36.

### III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis*, the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if, "after providing the plaintiff the

opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of his legal conclusions that give rise to a reasonable inference that Defendants are liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the

victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

### IV.   DISCUSSION

#### A.   *Eleventh Amendment immunity and official capacity.*

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).  Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

This immunity applies to both federal and state law claims brought in federal court.  *See Raj v. La. State Univ.*, 714 F.3d 322, 328-29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court). Although Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Commc'ns v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit, nor has Congress abrogated the Eleventh Amendment immunity by enacting 42 U.S.C. § 1983 or 42 U.S.C. § 1985.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58,

71 (1989). Accordingly, the undersigned respectfully recommends that Plaintiff's claims against the State of Texas be dismissed as barred by the Eleventh Amendment.

Furthermore, a suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will*, 491 U.S. at 71. The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues Officer Benavides in his official capacity for money damages, such claim is barred by the Eleventh Amendment. Thus, the undersigned respectfully recommends that Plaintiff's claims for money damages against Officer Benavides in his official capacity be dismissed.

### B. *Injunctive relief.*

Because Plaintiff now resides at the Lewis Unit and not the McConnell Unit or the Garza West Unit, his claims seeking injunctive relief are rendered moot. *See Smith v. City of Tupelo, Mississippi*, 281 F. App'x 279, 282 (5th Cir. 2008) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)); *Sias v. Jacobs*, No. 6:17cv413, 2017 WL

8229544, at *4 (E.D. Tex. Dec. 11, 2017); *King v. TDCJ*, No. 3:15-CV-1365-N-BH, 2016 WL 8671926, at *2 (N.D. Tex. Jan. 8, 2016). Accordingly, the undersigned respectfully recommends that Plaintiff's claims for injunctive relief be dismissed with prejudice.

### C.    *Excessive force.*

Plaintiff's claim of excessive force arises in connection with Officer Benavides' alleged assault of Plaintiff on June 18, 2018. Inmates have a constitutional right to be free from the use of excessive force. *See Anthony v. Martinez*, 185 F. App'x 360, 363 (5th Cir. 2006). To state an excessive force claim, a plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury the plaintiff suffered was more than *de minimis* (but not necessarily significant). *See Hudson v. McMillian*, 503 U.S. 1, 6-7, 10 (1992).

As an initial matter, the undersigned will consider whether Plaintiff's excessive force claim is barred by the running of the applicable statute of limitations. Federal civil rights actions instituted in Texas, such as those brought pursuant to § 1983, are deemed analogous to personal injury claims, and, therefore, the applicable limitations period is the two years fixed by Tex. Civ. Prac. & Rem. Code § 16.003(a). *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). Accrual of a § 1983 claim is governed by federal law. *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002). A cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). Dismissal is

appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations. *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999).

Excessive force claims generally accrue on the date when the force is inflicted. *See Price v. City of San Antonio*, 431 F.3d 890, 893-94 (5th Cir. 2005)(*per curiam*); *Armstrong v. Serpas*, 670 F. App'x 851, 852 (5th Cir. 2016). Plaintiff's allegations in this case reflect that Officer Benavides' assault occurred on June 18, 2018. Plaintiff had knowledge of all pertinent facts of his excessive force claim at the time he was allegedly assaulted and suffered injury as a result.

Under the prison mailbox rule, a *pro se* inmate's § 1983 complaint is filed as soon as the pleadings have been deposited into the prison mail system. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *see also Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) (*per curiam*). Giving Plaintiff the benefit that he placed his complaint in the prison mail system on the day he signed the complaint, the earliest day of filing would be October 28, 2021. (Doc. No. 1, p. 5.) Plaintiff filed his complaint more than three years after the facts giving rise to his excessive force claim. Because Plaintiff's excessive force claim accrued on June 18, 2018, it is time barred pursuant to the running of the applicable two-year statute of limitations. Accordingly, the undersigned respectfully recommends that Plaintiff's excessive force claim against Officer Benavides be dismissed with prejudice as time barred.

### D. *Deliberate indifference claim*.

Plaintiff alleges that: (1) Dr. Chang placed a housing restriction on Plaintiff based on his medical conditions which required Plaintiff to be placed in a bottom bunk; (2) three weeks after arriving at the McConnell Unit, a prison official nevertheless placed Plaintiff in a top bunk; and (3) Plaintiff subsequently injured his back when he fell off his top bunk at the McConnell Unit. Liberally construed, Plaintiff asserts an Eighth Amendment claim of deliberate indifference to his health.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1970). The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (Hanks, J.) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the [inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed." *Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 837 and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)).

In his original complaint, Plaintiff sought to hold the State of Texas and Dr. Chang as responsible for his fall. (Doc. No. 1, pp. 3-4.) However, as discussed above, the

12 / 16

Eleventh Amendment bars Plaintiff's § 1983 claim against the State of Texas. Plaintiff further clarified at the *Spears* hearing that he does not seek to bring any constitutional claims against Dr. Chang with regard to the injuries he suffered at the McConnell Unit when he fell off the top bunk.

Plaintiff's testimony at the *Spears* hearing indicates that he holds an unidentified medical official at the McConnell Unit responsible for placing Plaintiff in a top bunk even though he knew Plaintiff was restricted to a lower bunk only. (Doc. No. 18, p. 17.) To the extent Plaintiff has raised a deliberate indifference claim against this unknown medical official, it is barred by the running of the two-year limitations period.

In considering whether Plaintiff's deliberate indifference claim is untimely, the undersigned must first review Plaintiff's submissions and *Spears* hearing testimony to ascertain the date he fell from the top bunk. Plaintiff testified initially at the *Spears* hearing that he was transferred from the Garza West Unit to the McConnell Unit sometime in 2019, that he was housed at the McConnell Unit for about nine months, and that he ended up at the Lewis Unit beginning in January 2020. *Id.* at 5-7.

Plaintiff's *Spears* hearing testimony, however, reveals his faulty memory about the timeline of his housing assignments in various TDCJ units, including the McConnell Unit.[4] Plaintiff indicated at one point that he suffered a back injury in 2020 when he was placed in a top bunk at the McConnell Unit. (Doc. No. 18, p. 12.) Later in the *Spears* hearing, however, Plaintiff responded affirmatively to the undersigned's question

---

[4] Plaintiff's medical records indicate that he was housed in 2019 at both the Huntsville and Hughes Units. (Doc. No. 8, p. 3.) Plaintiff does not mention in his *Spears* hearing testimony about being housed at these units.

whether he fell from the top bunk at the McConnell Unit. *Id.* at 16. Plaintiff acknowledged that he could not recall the exact date of when he fell and instead referred the Court to the medical records submitted as showing the correct date. *Id.* at 19-20. Certain medical records provided by Plaintiff, dated July 21, 2018, establish that Plaintiff complained of back problems after falling off his top bunk earlier that morning in the McConnell Unit. (Doc. No. 6, p. 1.)

"A section 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs [or overall health] accrues when the prisoner knows of his physical injury and its cause." *Villarreal v. Winzer*, No. H-20-1011, 2020 WL 1659931, at *2 (S.D. Tex. Mar. 31, 2020) (Ellison, J.). The events forming the basis of Plaintiff's deliberate indifference claim accrued as late as July 21, 2018, which is when Plaintiff's medical records show the date he fell off the top bunk at the McConnell Unit after complaining to prison officials about a violation of his bottom-bunk restriction. As discussed above, Plaintiff filed this civil rights action on October 28, 2021. Thus, even assuming that Plaintiff's deliberate indifference claim against an unknown McConnell Unit official accrued on July 21, 2018, such claim is time-barred pursuant to the running of the applicable two-year statute of limitations. Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim be dismissed with prejudice as time-barred.

## V.    RECOMMENDATION

For the reasons stated above, and for purposes of §§ 1915A and 1915(e)(2), the undersigned recommends that: (1) **Dr. Philemon Chang** be **DISMISSED** from this action; (2) Plaintiff's claim for money damages against **Officer Benavides** in his official capacity be **DISMISSED** as barred by the Eleventh Amendment; (3) Plaintiff's claim against the **State of Texas** be **DISMISSED** as barred by the Eleventh Amendment; (4) Plaintiff's claims seeking injunctive relief be **DISMISSED with prejudice** as rendered moot; and (5) Plaintiff's claims of excessive force and deliberate indifference be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to § 1915A(b)(1).

The undersigned respectfully recommends further that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be **INSTRUCTED** to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

## VI.    NOTICE

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **14 DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **14 DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on February 24, 2022.

_____
MITCHEL NEUROCK
United States Magistrate Judge